United States District Court
Southern District of Texas
**ENTERED**
December 19, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MARIA DEL ROSARIO § | |
| ROSALES-RODRIGUEZ, § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 1:16-cv-258 |
| § | |
| NANCY A. BERRYHILL, Acting § | |
| Commissioner of the Social Security § | |
| Administration, et al. § | |
| Defendants. § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of Defendants' "Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" (hereinafter, the "Motion"). Dkt. No. 9. Plaintiff filed her response in opposition on October 10, 2017. Dkt. No. 14. Defendant replied on November 20, 2017. Dkt. No. 18. For the reasons stated below, it is recommended that Defendants' Motion be **GRANTED.**

I. **Background and Procedural History**

Plaintiff filed suit against Defendants on October 8, 2016. Dkt. No. 1. In her complaint, Plaintiff alleges that she requested a Social Security card from Defendants on September 29, 2016, but Defendants refused to process her request "because she could not comply with their excessive and unreasonable demands for documents." *Id.* at 1. According to Plaintiff, this refusal constituted a deprivation of a right and privilege she held as a United States citizen. *Id.* Plaintiff seeks a

declaration of citizenship under 8 U.S.C. § 1503(a), as well as relief under the Administrative Procedure Act (the "APA") and Mandamus Act. Dkt. No. 1 at 7-10.

Plaintiff's complaint asserts that she was born in La Feria, Texas. Dkt. No. 1 at 2. Plaintiff also acknowledges that she has a Mexican birth certificate stating she was born in Matamoros, Tamaulipas, Mexico. *Id.* at 3. She "understands that her mother obtained a Mexican birth certificate for her so that she could graduate from elementary school in Mexico." *Id.* Plaintiff does not claim to have a Texas birth certificate, but maintains that a baptismal record issued by a church in La Feria confirms her birth in the United States. *Id.*

On September 29, 2016, Plaintiff visited the Social Security Administration (the "SSA") office in Brownsville, Texas, and attempted to apply for a Social Security card. Dkt. No. 1 at 6. When asked by an SSA official whether she had brought any original documents as part of her application, Plaintiff presented a letter from Rev. Rodolfo Franco, a priest at the La Feria church where Plaintiff asserts that she was baptized. *Id.* The letter provided "that in the baptismal register of this parish is the following entry of the baptism of: Maria del Rosario Rosales, born August ___, 1956 in La Feria, Texas."[1] *Id.* According to Plaintiff, the SSA official "refused to process her application," and instead, "she was given a list of documents she had to bring." *Id.*

---

[1] According to Plaintiff, her son traveled to the La Feria church and obtained a copy of the baptismal record in 2016. Dkt. No. 1 at 5. Plaintiff then attempted to enter the United States from Mexico, using the baptismal record. *Id.* However, she was detained and "released on her own recognizance," and the baptismal record was allegedly kept by U.S. Immigration and Customs Enforcement ("ICE"). *Id.* When Plaintiff visited the church to obtain a new copy, she was informed that the church could only issue one copy of a baptismal record per year. *Id.* at 5-6. Instead, she received a letter from the church's priest, noting the existence of the baptismal record. *Id.* at 6.

Defendants filed the instant Motion on March 14, 2017. Dkt. No. 9. The parties submitted a joint status report on October 2, 2017. Dkt. No. 11. Plaintiff subsequently requested and received leave to file her response to Defendants' Motion. Dkt. Nos. 12, 13. Plaintiff filed her reply on October 10, 2017. Dkt. No. 14. Defendants responded on November 20, 2017. Dkt. No. 18.

## II.     Legal Standard

**FED. R. CIV. P. 12(b)(6)**. Rule 12(b)(6) provides for dismissal of a cause of action based on the plaintiff's failure to state a claim upon which relief could be granted. FED. R. CIV. P. 12(b)(6). "Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008). All well-pleaded facts will be taken as true and viewed in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). But any allegations in the complaint which are conclusory will not be afforded a presumption of truth. *Johnson v. E. Baton Rouge Fed'n of Teachers*, No. 17-30175, 2017 WL 3772887, at *1 (5th Cir. Aug. 30, 2017) (per curiam). Therefore, a complaint must contain sufficient factual matter that states a claim to relief that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Legal conclusions that are "naked assertions devoid of further factual enhancement" or mere "formulaic recitation of [a claim's] elements" are not enough. *Id*. Instead,

factual allegations are facially plausible when they allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* Finally, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)) (internal citations omitted).

### III. Discussion

**a. Section 1503(a)**

Section 1503(a) of title 8 of the United States Code provides:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action . . . against the head of such department or independent agency for a judgment declaring him to be a national of the United States[.]"

8 U.S.C. § 1503(a). Section 1503(a) continues, stating "[a]n action under this subsection may be instituted only within five years after the final administrative

denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is hereby conferred upon those courts." *Id.* Plaintiff contends that Section 1503(a) entitles her to a declaratory judgment of citizenship based on the SSA's alleged refusal to process her application for a Social Security card. Dkt. No. 1 at 7. Defendants argue that Section 1503(a) does not provide relief to Plaintiff, because there has been no final agency denial of Plaintiff's Social Security card application on the ground that she is not a citizen. Dkt. No. 9 at 4; Dkt. No. 18 at 1. Defendants are correct.

Courts have previously noted the denial of a Social Security card application could give rise to a Section 1503(a) claim. *See S.T. ex rel. Trivedi v. Napolitano, et al.*, No. H–12–285, 2012 WL 6048222 (S.D. Tex. Dec. 5, 2015) ("The denial of his social security card was sufficient for S.T. to seek a judicial determination of his citizenship[.]"); *Messenger v. Rice*, No. CV-05-0053-EFS, 2006 WL 276933 (E.D. Wa. 2006) ("A denial of a right or privilege under § 1503(a) requires an affirmative act that prevents a person from enjoying some aspect of United States nationality. Examples of such acts include the denial of a passport, a social security card, and the right to vote."). However, the government action which gives rise to a Section 1503(a) claim must be a "final agency determination" which denies a right or privilege based "upon the ground that [the plaintiff] is not a national of the United States[.]" 8 U.S.C. § 1503(a). Where "no department, agency, or official thereof [has] denied plaintiff's claim that she is a United States citizen . . . . there is no

basis for a declaratory action under subsection 1503(a)." *Said v. Eddy*, 87 F. Supp. 2d 937, 940 (D. Alaska 2000).

Here, the SSA did not enter a "final administrative determination" on Plaintiff's Social Security card application, or deny her claim that she is a United States citizen. Plaintiff provided the following sworn statement, in part:

> I told him that I was there to apply for the first time for my social security. I gave him the documents my attorney had prepared (Exhibit 1). I told him didn't have a Texas Birth Certificate. That all I have was my copy of my baptismal certificate and a letter by the priest of the church where I was baptized. This young officer then took my packet and without really reading it asked me if I had any original documents? I told him yes, and gave him the original letter from the priest where he writes that in his church of La Feria their records there was an entry that showed that I was baptized at his church in 1956 showing that I born in La Feria in that same year. I told this officer that I couldn't give him the original baptismal certificate because immigration had taken it from me when I crossed into the United States . . . . This young employee then gave me a list of documents I needed to get (Attached is the list as Exhibit 2).

Dkt. No. 1 at 6-7. Plaintiff asserts that the SSA official declined to process her application, but does not provide facts to allege that the SSA *denied* her Social Security card application by informing her that she could not ultimately receive a card, or issuing any written decision regarding Plaintiff's application. Instead, even taking Plaintiff's allegations as true, the SSA official provided Plaintiff with information on how she could proceed with her application, including a list of documents to present upon applying for a Social Security card.

Applicants need not prove that they are citizens in order to obtain a Social Security card—but they must provide the SSA with "convincing evidence of . . . age, U.S. citizenship or alien status, and true identity." 20 C.F.R. § 422.107(a), (e). One

example of such evidence is "a religious record showing age or date of birth."[2]  20 C.F.R. § 422.107(b).  However, "[a]ll paper or other tangible documents submitted as evidence must be originals or copies of the original documents certified by the custodians of the original records and are subject to verification."  20 C.F.R. § 422.107(a).  Pursuant to federal regulations, the SSA may not issue Social Security cards where the personal information submitted by an applicant cannot be verified.  20 C.F.R. § 422.107(g) ("We will not issue an original or replacement Social Security number card . . . when we are unable to verify the required evidence[.]").  Social Security application forms, such as the one submitted as an attachment to Plaintiff's complaint, provide lists of "Evidence Documents" which applicants may rely on to establish evidence of age, identity, U.S. citizenship, or immigration status.  Dkt. No 2 at 36.  A note included at the top of the "Evidence Documents" sheet in the application states: "The following lists are examples of the types of documents you must provide with your application and are not all inclusive.  Call us . . . if you cannot provide these documents."  *Id.*

Here, Plaintiff states that she provided the SSA official with the La Feria priest's letter and her copy of the baptismal record.  Dkt. No. 1 at 7.  Under SSA regulations, religious records may serve as evidence to prove age, but must be submitted as original documents or "copies of the original documents certified by

---

[2] The note given to Plaintiff by the SSA official states "[Y]ou must fill out an application for a Social Security number (SS-5), and show us the following documents," and proceeds to list eight separate documents, ranging from a birth certificate to a school report from primary school.  Dkt. No. 2 at 53-54.  Plaintiff argues that the list unreasonably surpasses the requirements of the SSA's regulations; while Defendants contend that the list only provided Plaintiff with examples of the types of documents she could submit to support her application.  Dkt. No. 1 at 8; Dkt. No. 9 at 3.  Regardless of any inconsistencies between the note and SSA regulations, however, the SSA still never issued a final agency determination on Plaintiff's application.

the custodian of the original record." 20 C.F.R. § 422.107(a). Regulatory law and the SSA application itself also list examples of additional documents that may be furnished as evidence of age, identity, U.S. citizenship, or immigration status. 20 C.F.R. § 422.107(a), (e); Dkt. No. 2 at 36. Plaintiff does not allege that she returned to the SSA to submit any additional documents, such as an original or certified copy of her baptismal record; nor does she allege that she continued to contact the SSA (through, for example, the phone number listed in her application form) to pursue her application further or to advise them that she could not provide the relevant documents. As Defendants assert, "Plaintiff could have reappeared at any time with an original copy of her baptismal certificate or any of the other documents on the list of acceptable documents given to Plaintiff and the agency would have adjudicated her application." Dkt. No. 18 at 2. But "[b]ecause she has not done that, there has been no final agency decision to appeal." *Id.* Without a final administrative determination on her Social Security application, Plaintiff cannot invoke Section 1503 and does not state a claim against Defendants. *Gutierrez v. Tillerson*, et al., No. 17-cv-111, 2017 WL 6044108 (S.D. Tex. Nov. 15, 2017), *adopted by*, 2017 WL 6054941 (S.D. Tex. Dec. 6, 2017).

Plaintiff relies on *Gutierrez v. Kerry*, in which summary judgment was entered for a plaintiff who raised a Section 1503 claim after the U.S. State Department revoked his passport. *Gutierrez v. Kerry*, No. 1:12-CV-155, Dkt. No. 165 (S.D. Tex. Sept. 29, 2017). In *Gutierrez*, however, the State Department had issued a final administrative denial via a letter indicating that the passport had

been revoked and was to be surrendered. *Gutierrez*, No. 1:12-CV-155, Dkt. No. 142 at 4-5 (S.D. Tex. Mar. 10, 2016). Here, by contrast, the SSA never issued an official denial—or any letter which could be construed as a denial—that served to deprive Plaintiff of a right or privilege of U.S. citizenship, as would be required under Section 1503.

Notably, Defendants stated in their Motion that they "*denied* Plaintiff's application for a Social Security number because she did not provide an original birth document demonstrating a birth in the United States." Dkt. No. 9 at 2 (emphasis added). Defendants have subsequently explained this in a footnote as "a poor choice of words," and suggest that the language was used mistakenly, pointing to instances where they instead consistently described the SSA official's conduct as a refusal to process, rather than as a final denial of Plaintiff's application. Dkt. No. 18 at 2 n.1. Regardless of how Defendants may have characterized the events, because the instant Motion is before the Court under Rule 12(b)(6), the Court has focused on whether Plaintiff's factual allegations—taken as true—may state a claim for relief. *Iqbal*, 556 U.S. at 662. Because Plaintiff's pleadings lack plausible allegations that the SSA issued a final agency determination denying her application upon the ground that she is not a U.S. citizen, the Court is unable to

"infer more than the mere possibility of misconduct," and dismissal is proper.[3] *Iqbal*, 556 U.S. at 679.

### b. Administrative Procedure Act

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In such circumstances, where the plaintiff is not seeking money damages, the APA acts as a waiver of the government's sovereign immunity, allowing plaintiffs to proceed in federal court in an effort to rectify agency action. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). But "[t]he APA provides for judicial review only of '*final* agency action.'" *Dalton v. Spencer*, 511 U.S. 462, 469 (1994) (emphasis in original). "An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.'" *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)). "The core question is whether the agency has completed its decisionmaking process[.]" *Id.*

Plaintiff's APA claim fails for reasons similar to her Section 1503 claim. For a plaintiff to implicate a federal court's review and raise an APA claim, there must have been a "final agency action." *Dalton*, 511 U.S. at 469. Here, an SSA official orally advised Plaintiff that her application could not be processed during her visit

---

[3] The Court recognizes that another court in the Southern District of Texas, in *S.T. ex rel. Trivedi v. Napolitano, et al.*, permitted a plaintiff to proceed with a claim under Section 1503(a) for denial of a Social Security card. No. H–12–285, 2012 WL 6048222 (S.D. Tex. Dec. 5, 2015). However, in that case, the defendants never argued that the plaintiff failed to state a claim on that issue, conceding, "'Plaintiff has alleged an 8 U.S.C. § 1503 cause of action against Defendant [Social Security Commissioner] Astrue only." Accordingly, the court need not have considered, in the 12(b)(6) context, whether the plaintiff had stated a claim for the denial of his Social Security card on the basis of citizenship. *Id.*

to the SSA office, because she lacked documents listed by the SSA's regulations. Dkt. No. 1 at 7. Such facts do not indicate that the SSA had "completed its decisionmaking process" with respect to whether Plaintiff could receive a Social Security card, or even indicate that the SSA had *begun* its formal decisionmaking process on Plaintiff's application. *Franklin v. Massachusetts*, 505 U.S. at 797. Because Plaintiff did not subsequently attempt to comply with the official's instructions, the SSA never initiated a review of her application which could lead to final agency action and invoke federal jurisdiction. Further, even if the SSA had issued a final denial of Plaintiff's application based on the ground that she was not a citizen, as Plaintiff suggests, Plaintiff's adequate remedy would be found under Section 1503(a), and would foreclose concurrent relief through the APA. *See, e.g.*, *Gutierrez v. Tillerson, et al.*, No. 17-cv-111, 2017 WL 6044108 (S.D. Tex. Nov. 15, 2017), *adopted by*, 2017 WL 6054941 (S.D. Tex. Dec. 6, 2017) ("[T]he APA makes clear that it is unavailable to a plaintiff who may seek an adequate remedy through an alternative statute."). For these reasons, Plaintiff's APA claim should also be dismissed.

### c. Mandamus

"The Mandamus Act vests district courts with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992). A writ of mandamus may issue "only when the plaintiff's 'claim is clear and certain and the duty of the officer is

ministerial and so plainly described as to be free from doubt.'" *Id.* (citations omitted). Upon filing her reply brief, Plaintiff conceded that she now "accepts dismissal of the mandamus count" listed in her original complaint. Dkt. No. 14 at 2. Thus, her claim for mandamus relief should be dismissed accordingly.

## IV.   Recommendation

For the reasons stated above, it is recommended that Defendants' Motion be **GRANTED**.

## V.   Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 19th day of December, 2017.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**